# NEW YORK SUPERIOR COURT.

DANIEL B. CHILDS, as Assignee of MICHAEL CONNOR, plaintiff and respondent, agt. BRIDGET CONNOR, MICHAEL CONNOR and JOHN SWEETMAN, defendants and appellants.

*Conveyances of real estate, made with alleged intent to defraud creditors.*

By the Revised Statutes (2 *R. S.*, 137), no conveyance or charge shall be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration.

If it appears from the evidence and circumstances that a conveyance of real estate made by the husband to his wife was a reasonable and proper provision for the wife, and that her property had been employed in the purchase of it by her husband, and that in equity she was his creditor, and that in the condition of her husband's estate at the time there was nothing more in the transaction than what was just and fair as a settlement for her, the conveyance cannot be invalidated by his subsequent inability to pay a debt then existing.

*General Term, January 4,* 1875.

THE conveyances in controversy were executed on the 28th day of April, 1870. The court found that the defendant Michael Connor was at that time indebted to one John Post and one David C. Carpenter, and that one Gibbons preferred a claim against him in tort for $2,500, and that by reason of the conveyance Connor became unable to pay his debts in full, and was rendered insolvent. Subsequently the court found, at the request of the defendants, that the only creditor who held an unsatisfied claim against Michael Connor, at the time of the conveyance, April 28th, 1870, was John Post.

*A. P. Hinman,* attorney for defendants and appellants.

*King & Meyer,* attorneys for plaintiff and respondent.

CURTIS, *J.* — This subsequent finding accords with the evidence. ⋅ The claim for the tort had been compromised for $150, and arrangements made for its extinction in weekly payments, by which it was subsequently mostly, if not entirely, paid, and found by the court to be paid. The indebtedness to Post appears to be made up of a note of Michael Connor's for $150, that Post bought of one Carpenter, and the balance of an account between Post and Connor, made up to October 9, 1871, and extending from May 11, 1869, amounting to $309.54, as claimed by the plaintiff. The testimony is obscure in reference to the note for $150, given by Connor to Carpenter, and it does not appear to have been in existence until after the conveyances were executed. Post sold Connor, who was a blacksmith, at frequent intervals, bundles of iron, on credit, receiving sums from time to time in payment.

In this way he sold to Connor, up to the time of the making of the conveyances, iron amounting to $530, and subsequently, up to October 9, 1871, when he ceased to credit him, additional iron amounting to $401. From the figures given in the evidence, there appears to have been, at the time of the conveyance by Connor, April 28, 1870, a balance due Post of $140 or thereabouts, and between that time and the 9th of October, 1871, Connor paid the plaintiff $375.54, including $55.54 in old shoes. The evidence fails to show that this balance of $140 due to Post at the time of the conveyance was not extinguished by the amounts shortly after paid by Connor to Post, and in all amounts to $375.54.

It would thus appear that if there was any indebtedness to Post when Connor conveyed the lot it was very trivial, and the question arises whether this conveyance was made with the intent to defraud creditors, and should be set aside. The evidence shows that the defendants, Connor and his wife, were very ignorant but industrious people — he working at his trade and doing a good business, and she keeping boarders and making dresses — and by their joint savings buying the lot in question. The deed was taken in his name, though

the money in part was her property that was applied toward paying for it. She became discontented with the arrangement, and when the action was brought or threatened for the tort, claiming heavy damages, the conveyances in controversy were executed, transferring the property to her.

If he was at this time solvent, and this was done, as she claims, as an act of justice to her, and to provide for her and her children, it presents a case deserving of consideration. It is in evidence, and uncontradicted, that at this time Connor's business was prosperous, and that he had other property and two horses worth $950, or which he subsequently sold for that sum. He had compromised the claim for the tort, and owed, if any sum whatever, not to exceed $500; and the evidence fails to show that he had any adequate motive for attempting to commit a fraud. It is in evidence that about two years after the transfer of the lot, Connor fell sick, and competition set in and his business ran down. His wife has ever since been in possession of the lot, and paid the interest upon the mortgage upon it.

By the Revised Statutes it is declared that no conveyance or charge should be adjudged fraudulent as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration (2 *Rev. Stat.*, *p.* 137, *paragraph* 4).

The question is one of fact; and if the circumstances show that the conveyance was a reasonable and proper provision for the wife, and that her property had been employed in the purchase of the lot, and that in equity she was the creditor of her husband, and that in the condition of the husband's estate at the time there was nothing more in the transaction than what was just and fair as a settlement for her, the conveyance could not be invalidated by his subsequent inability to pay a debt then existing (*Babcock* agt. *Eckler*, 24 *N. Y.*, 623; *Baldwin* agt. *Ryan*, 3 *Sup. Ct. Rep.*, 251).

Upon a careful consideration of the evidence, there appears to be no motive disclosed to induce the defendant Connor to seek to defraud creditors by this transfer. There is an entire

failure of proof that he was insolvent or unable to pay all his debts, which, if any, were insignificant in amount at the time. The conveyance to the wife was a proper provision to her; and in view of the fact that she had contributed toward the original purchase, and had always claimed that the lot should be held as a provision for her and her children, it was no more than a reasonable and just and prudent act on the part of the husband.

In this view of the case, it becomes unnecessary to consider the question raised by the appeal from the order granting the allowance of $150 to the plaintiff; but it is difficult to see how, in any contingency, more than five per cent could be granted upon the amount of plaintiff's judgment for $627.92 against the defendant, the payment of which he seeks to recover from the property in question. This substitution of Daniel B. Childs, as assignee in bankruptcy of Michael Connor, as plaintiff, on the 23d of May, 1874, cannot enlarge the amount of the claim or subject-matter involved.

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

MONELL, C. J., concurred.